IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


**UNITED STATES OF AMERICA ex rel.**　　)
**BRANDON V. WYATT**　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Petitioner,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　)　　No. 12 C 4906
　　　　　　　　　　　　　　　　　　　　)
**MICHAEL P. ATCHISON, Warden, Menard**　)
**Correctional Center,**　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Respondent.　　　　　　　　　)


<u>MEMORANDUM OPINION AND ORDER</u>

At the conclusion of a bench trial in February of 2005, petitioner Brandon Wyatt was convicted of first degree murder and attempted armed robbery and sentenced to consecutive terms of thirty-six and six years of incarceration for the July 17, 1999, shooting of Metra train ticket agent Wilbert Hooten. Petitioner challenged his conviction and sentence without success in both direct appeals and post-conviction proceedings in the Illinois state courts. Having no further avenues for relief in the state courts, petitioner now seeks a federal writ of habeas corpus. He asserts two claims: first, that the trial court violated his rights under the Fourteenth Amendment when it denied his motion to suppress his confession; and second,

that his trial counsel's refusal to call him to testify at the suppression hearing violated his right to effective counsel. For the reasons that follow, I deny his petition and decline to issue a certificate of appealability.

I.

The following facts are taken--but for a few undisputed details gleaned from my review of the record--from the Illinois Appellate Court's Rule 23 Order affirming petitioner's conviction and sentence on direct appeal, *People v. Wyatt*, No. 1-05-0819 (Ill. App. Ct. Sept. 17, 2008), Resp. Ans., Exh. A (hereinafter, "*Wyatt*").[1]

On July 10, 2000, almost a year after Hooten's shooting, and a few months shy of petitioner's eighteenth birthday, petitioner was awakened in the middle of the night at a friend's house and arrested by Chicago Police Detective McVicker and another officer. Petitioner was arrested, handcuffed, taken to a squad car, and advised of his *Miranda* rights before being transported to Chicago's Area 2 police station.

At around 2:40 a.m., petitioner was taken to an interview room at Area 2. Detective McVicker removed

---

[1] The state court's factual findings are presumed correct absent clear and convincing evidence to the contrary, of which, as discussed in a later section, petitioner offers none. *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003).

petitioner's handcuffs and again advised him of his *Miranda* rights. McVicker was wearing his firearm and did not remove it from its holster. At some point, petitioner began to fall asleep during the interview, so McVicker stopped questioning him, gave him a bathroom break, and left the interview room, telling petitioner to "yell or knock on the door if he needed anything." McVicker checked on petitioner periodically over the next few hours and observed that he was sleeping.

The Illinois Appellate Court made no mention of what, if anything, took place from that point until 2:55 the next afternoon, when it noted that petitioner was again allowed to use the bathroom. Thereafter, petitioner was given food and a soda (at around 3:30 p.m.), palm-printed and fingerprinted at some point thereafter, and placed in physical lineups from 10:30 to 11:30 p.m. After police advised petitioner that he had been identified in a lineup, petitioner confessed to Hooten's murder.

McVicker then contacted Assistant State's Attorney Beth Pfeiffer, who interviewed petitioner at around 1:00 a.m. on July 11, 2000. Pfeiffer again advised petitioner of his *Miranda* rights and explained that she was not his attorney and that he could be tried as an adult. Petitioner said he understood his rights, then made inculpatory statements,

including a videotaped statement filmed at about 4:15 a.m. The video memorializes petitioner being orally *Mirandized*. Petitioner did not, however, receive written *Miranda* warnings.

The Illinois Appellate Court summarized petitioner's videotaped confession:

> [Petitioner] stated that he had a conversation with a friend and they planned the robbery. [Petitioner] stated that he shot and killed the victim when he attempted to rob him. [He] stated that he was armed with a .32 caliber revolver that he had taken from his father's tool chest and was dressed in black jeans and a black jacket to avoid standing out. He waited on the train platform for a long time for a train which appeared to be good to rob. When the victim asked [petitioner] for his fare, [petitioner] took out his gun, pointed it at the victim and demanded his money. The victim dropped his fares and receipts but no money. [Petitioner] told the victim it was not a joke and the victim held up his keys and jingled them at [petitioner], then took a step toward [petitioner]. [Petitioner] shot the victim and then tried to open the doors. [Petitioner] tried to shoot out the windows when the doors would not open. When the doors opened, the other conductor jumped off the train and [petitioner] chased him before hiding in a garage and then returned home.
>
> [Petitioner] stated that he did not know where the gun went and that when his father asked, he told him that he was in the alley shooting with friends and threw the gun away when the police came. [Petitioner] apologized to the victim's family and his own family for his actions. [Petitioner] stated that he was treated "fairly good" and with respect and dignity by the police. [Petitioner] stated that no threats or promises were made in exchange for his statement.

Before the start of the trial, petitioner moved to suppress the inculpatory statements he made after his arrest. A review of petitioner's motion reveals the following factual allegations: 1) that petitioner was seventeen years old and living with his parents at the time of his arrest; 2) that he was awakened from sleep by the arresting officers; 3) that he was deprived of sleep and continuously interrogated by members of the Chicago Police Department and ASA Pfeiffer during his custody; 4) that his waiver of his *Miranda* rights was not knowing, intelligent, and voluntary; 5) that his statements were the "product of coercion" by the police and were "induced by overcoming his will to resist through sleep deprivation, refusal to afford him the opportunity to confer with counsel and his lack of experience with criminal matters" and "by direct and indirect promises of leniency by ASA Pfeiffer;" 6) that he was denied bathroom privileges for over fourteen hours; 7) that he was in custody for over twenty-two hours; and 8) that he was interrogated outside the presence of a youth officer or concerned adult.

As noted above, petitioner did not testify at the suppression hearing, nor did his attorney put on any evidence. The trial court did, however, treat the

allegations in petitioner's motion as petitioner's sworn statement of the facts.

The court denied the motion, concluding that petitioner's statement was voluntary. The court rejected the argument that the confession was "clearly an act" and that petitioner had "merely regurgitated a script created by the police." The court found that the testimony of the state's witnesses--including Detective McVicker and ASA Pfeiffer, both of whom denied that petitioner was interrogated for twenty-two hours, and denied that they had deprived him of sleep or of bathroom privileges--was credible. The court further found that the state had shown that petitioner had been properly advised of his *Miranda* rights and had knowingly waived them, and that no "improper actions" by the state had been established.

At trial, petitioner's videotaped confession was shown, as was the testimony of McVicker, Pfeiffer, and several eyewitnesses to the events surrounding Hooten's shooting: train conductors who had seen Dace and petitioner on the train platform; the train conductor who worked with Hooten at the time of the shooting, and who identified petitioner, in a lineup and at trial, as the shooter; and a passenger on the train, who testified that she saw petitioner running

after the conductor and who likewise identified him, in a lineup and at trial, as the man with a gun.

The trial court also considered evidence that fingerprints taken from the crime scene matched only Dace, and not petitioner; that a .32 caliber bullet was found in the victim and .38 caliber bullets were recovered from the train vestibule; and that the murder weapon was never recovered. In rendering its verdict, the trial court referred to petitioner's videotaped confession as the "linchpin" of the State's case.

Petitioner asserted various claims on direct appeal and in post-conviction proceedings. Relevant to the instant petition are his claim, on direct appeal, that the trial court erred in denying his motion to suppress based on the erroneous determination that petitioner's videotaped confession was voluntary, and his claim, in a post-conviction petition, that his trial counsel was ineffective for refusing to let him testify at the hearing on his suppression motion. Both claims were rejected in Rule 23 Orders by the Illinois Court of Appeals, the last state court to issue an opinion in his case.

## II.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a state

prisoner habeas relief unless the decision of the highest state court to adjudicate the petitioner's claims on the merits, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Smiley v. Thurmer*, 542 F.3d 574, at 580 (7th Cir. 2008) (citing 28 U.S.C. § 2254(d)). Moreover, "[w]hen the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed. *Miranda v. Leibach*, 394 F.3d 984 (citing *Lambrix v. Singletary*, 520 U.S. 518, 523, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (collecting cases)).

In this case, respondent argues that petitioner's first claim-—that the trial court erroneously failed to suppress his confession--is procedurally defaulted because the Illinois Appellate Court rejected it based on a state law procedural ground, namely petitioner's failure to abide by 725 ILCS 5/116-1(c). Under that statute, the appellate court held, "any issue that is not specifically raised during trial by motion or proper objection and by written

posttrial motion is considered waived." *Wyatt,* at 7. The court went on to hold that "this rule is grounded in sound policy and must be strictly followed," quoting at length from the Illinois Supreme Court's decision in *People v. Enoch*, 122 Ill. 2d 176, 186-88 (1988).

The court considered and rejected petitioner's argument that he had preserved his claim with the assertion, in his motion for a new trial, that he "did not receive a fair and impartial trial as guaranteed by the Illinois and federal constitutions." The court held, however, that "the specificity required must be beyond broad, general statements or boiler-plate language," and concluded that petitioner's allegation "in no way contains any specific claim of error to put the trial court or the State on notice" of the specific claim he raised on appeal, and thus "cuts clearly against the policy" set forth in *Enoch*.

It is true that the Illinois Appellate Court went on to consider the merits of petitioner's claim. But as the Seventh Circuit has repeatedly acknowledged, "when a state court decides the merits and asserts a procedural bar, the federal court must respect both rulings." *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383-84 (7th Cir. 1990) ("[s]ometimes the court gives alternative procedural and substantive grounds

('The claim has been waived; but even if it had not been we would find no error.')… [I]n alternative-grounds cases the federal court must respect the procedural basis, so long as the state court says that each ground is sufficient."); *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

Petitioner argues that his case is not like *Brooks* and *Prihoda*, in which the petitioners' claims were defaulted, but instead is like *Harris*, in which the Court held that procedural default did not bar consideration of the petitioner's federal claims because the Illinois Appellate Court had not "clearly and expressly" rested its holding on a state procedural ground.  489 U.S. at 263.  Petitioner insists that similarly in his case, the Illinois Appellate Court did not rely on the state forfeiture law as a ground for its decision, but merely "note[d] a procedural default and then ignore[d] it," preserving his claim under *Harris*.

Petitioner's proposed interpretation of the appellate decision in his case cannot be squared with the court's

thorough discussion of the waiver issue. Unlike in *Harris*, where the Illinois Appellate Court had merely "stat[ed] that most of petitioner's allegations "could have been raised [on] direct appeal," 489 U.S. at 266, the court in this case cited the controlling state statutory and case law; explained the policy considerations underlying the law; and expressly applied the law in rejecting petitioner's argument for non-waiver. Only then did the court go on, "[w]aiver notwithstanding," to address the merits of petitioner's claim. *Wyatt*, at 8. Viewed as a whole, the Illinois Appellate Court's decision plainly sets forth alternative procedural and substantive bases for its holding, which I am compelled by *Prihoda*, *Brooks,* and, indeed, *Harris* to respect. Accordingly, I conclude that petitioner's claim that the trial court violated his Fourteenth Amendment rights by failing to suppress his confession is procedurally defaulted.[2]

I now turn to petitioner's ineffective assistance of counsel claim, which I review on the merits. To prevail on this claim, petitioner must meet the well-known, two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984),

---

[2] Petitioner does not claim that the default is excused by "cause and prejudice," or that the "fundamental miscarriage of justice" exception to the procedural default rule applies. *See House v. Bell*, 547 U.S. 518, 536 (2006).

under which he "must show both that his lawyer's performance
fell below an objective standard of reasonableness as
measured by prevailing professional norms, and also that the
petitioner suffered prejudice as a result of counsel's
errors." *Pole v. Randolph*, 570 F.3d 922, 940 (7th Cir.
2009). If petitioner fails to make an adequate showing on
either component, I need not consider the other before
rejecting his claim. *Id*. at 934 (citing *Strickland*, 466 U.S.
at 697 and *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)).

The Illinois Appellate Court in this case correctly
cited *Strickland* as the governing standard and accurately
quoted from *Strickland* in holding that petitioner was
required to show "(1) that his counsel's 'representation
fell below an objective standard of reasonableness;' and (2)
that there is a 'reasonable probability that, but for
counsel's unprofessional errors, the result of the
proceeding would have been different.'" Rule 23 Order,
*People v. Wyatt*, No. 1-09-3244 (Ill. App. Ct. Aug. 3, 2011),
Resp. Ans., Exh. K, at 6-7 ("*Wyatt II*"). The court went on
to analyze petitioner's claim, including his argument that
he was prejudiced by his attorney's failure to call him at
the suppression hearing because "[petitioner] and only
[petitioner] could provide testimony and evidence in support
of the claim that his statement was involuntary and should

be suppressed." *Wyatt II* at 8. The appellate court ultimately rejected petitioner's claim, concluding that nothing in the record, including the affidavits petitioner submitted in support of his post-conviction petitione, "indicate[d] that the proceedings would have changed if defendant would have testified" at his suppression hearing." *Id*. at 9.

Petitioner argues that the Illinois Appellate Court's decision amounts to an unreasonable application of *Strickland* because its conclusion omits the "reasonable probability" portion of the controlling standard. Indeed, the Seventh Circuit has held that this omission "is not a mere detail or a quibble over word-smithing," and that a state court decision resting on a standard that omits the phrase is "contrary to" clearly established federal law under § 2254(d)(1). *Mosley v. Atchison*, 689 F.3d 838, 850 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362 (2000). The Seventh Circuit has also held, however, that "[w]e have noted numerous times that there is no error when a court has correctly noted the *Strickland* standard and then used an incorrect shorthand version when stating its conclusion." *Woods v. Schwartz*, 589 F.3d 368, 378 n. 3 (7th Cir. 2009). That is plainly what happened in this case.

Moreover, the Illinois Appellate Court's application of *Strickland* was reasonable on the record before it.

In view of the deficiency petitioner attributes to his counsel--counsel's refusal to allow petitioner to testify at the suppression hearing--petitioner "must demonstrate that, had he testified, there was both a reasonable probability that he would have prevailed on the motion to suppress and a reasonable probability that he would have been acquitted." *Pole*, 570 F.3d at 943. The Illinois Appellate Court considered petitioner's argument that "had he been allowed to testify, he would have clarified his emotional state while in custody, his lack of experience with the criminal justice system and the promises made by his interrogators, while also providing more specificity about the amount of time, sleep and bathroom breaks he was afforded while in custody," but concluded that none of the evidence in the record rebutted the evidence of voluntariness that the State had presented at the hearing on petitioner's motion to suppress. *Wyatt II*, at 9. Indeed, the affidavit supporting petitioner's post-conviction petition states only, "[i]f I had been allowed to testify, I would of (sic) given information/testimony on assurances of leniency and coercion by Detectives Donald Buis, Robert McVicker, and Assistant State's Attorney Beth Pfeiffer, while in custody at Area Two

police station." Petitioner did not specify, however, what his testimony would have been, or explain how it would have tipped the scales in his favor at the suppression hearing.

Whether a confession is voluntary depends on the totality of the circumstances. *Pole*, 570 F.3d at 941. Petitioner does not dispute that the trial court treated the factual allegations in his motion to suppress as petitioner's sworn statements. These allegations included the very factors about which petitioner claims he would have testified: his youth, his inexperience with the criminal justice system, the length of his incarceration, and the alleged coercion by the police and the Assistant State's Attorney. The Illinois Appellate Court reasonably concluded that the generalities petitioner asserted in his post-conviction affidavit were not reasonably likely to have turned the tables at his suppression hearing. And because petitioner has not shown a reasonable probability that he would have prevailed on his suppression motion, he has not established prejudice under *Strickland*. Pole, 570 F.3d at 943.

### III.

For the foregoing reasons, petitioner's petition for a writ of habeas corpus is denied. For the same reasons, I conclude that petitioner has not made "a substantial showing

of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c) and decline to issue a certificate of appealability.

ENTER ORDER:

_____

**Elaine E. Bucklo**
United States District Judge

Dated: January 30, 2013